IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01268-MSK-KLM

ERNEST WEST,

      Plaintiff,

v.

CAPTAIN SCOTT, Sterling Corrections;
JOANN STOCK, Sterling Medical;
MR. ESTEP, CMRC Director;
MR. YOUNGBLOOD;
MR. YEATON, Unit Manager CMRC; and,
MS. CALLWELL, CMRC Medical,

      Defendants.

---

**OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Mr. West's "Response" **(# 22)**, which the Court treats as a motion for reconsideration of Senior Judge Weinshienk's June 18, 2009 Order **(# 8)** dismissing the Colorado Department of Corrections ("CDOC") as a party; a Motion to Dismiss by Mr. Estep, Mr. Youngblood, Mr. Yeaton, and Ms. Callwell **(# 41)**, Mr. West's response **(# 47)**, and the Defendants' reply **(# 50)**; and a Motion to Dismiss by Mr. Scott and Ms. Stock **(# 42)**, and Mr. West's response **(# 48)**.

**I. FACTS**

According to Mr. West's *pro se* Complaint **(# 3)**, the claims in this action arise under 42 U.S.C. § 1983, based on acts that occurred while Mr. West was an inmate in CDOC's Sterling Correctional Facility, and later, when he was housed at the Cheyenne Mountain Re-Entry Center

("CMRC"). Mr. West was apparently housed at the Sterling Correctional Facility from 2002 until October 2008, when he was transferred to a halfway house, and later taken back into custody and housed at the CMRC.

Mr. West alleges that, while housed at Sterling, Mr. Scott, a Shift Commander, "threw [him] in the 'hole' segregation on six different occasions without cause." Mr. West, who is black, believes that Mr. Scott's actions were motivated by racial animus because Mr. Scott allegedly once told Mr. West "I don't like you people," a statement Mr. West construed to refer to black people generally. Construing the Complaint liberally, the Court construes Mr. West to contend that Mr. Scott's conduct violated his 14th Amendment right to Due Process protections before being deprived of a liberty interest, his 8th Amendment right to avoid cruel and unusual punishment, and his 14th Amendment right to Equal Protection.

Mr. West also alleges that, in 2006 or 2007, while he was still an inmate at Sterling, Ms. Stock, a Nurse Practitioner, refused to renew (or perhaps refill) a doctor's prescription for pain medication for him. Mr. West contends that Ms. Stock explained that "she would not renew my pain meds no matter how much pain that I'm in [and] said that she didn't believe in pain meds [because] it's bad on one's stomach." Mr. West contends that "about a month later, the pain got so bad that the nerve hit my heart and I was rushed to the hospital by ambulance." He contends that "the doctor at the hospital told Ms. Stock to give me back my pain meds," but that Ms. Stock refused. With regard to this conduct, Mr. West asserts an 8th Amendment claim against Ms. Stock, sounding in deliberate indifference to his serious medical needs.

The remaining allegations in the Complaint concern conduct that Mr. West experienced while housed at CMRC. He contends that he got into a fight with a white gang member, and that

Mr. Yeaton, a Unit Manager, "sided against me" for racial reasons. Mr. West filed a grievance against Mr. Yeaton, and on April 23, 2009, Mr. Yeaton "threw me in segregation." As with the claim against Mr. Scott, the Court construes Mr. West's claim against Mr. Yeaton to sound under the Due Process and Equal Protection clauses, as well as invoking the 8th Amendment's ban on cruel and unusual punishment. In addition, a liberal reading of Mr. West's Complaint suggests that he may be asserting a claim against Mr. Yeaton for retaliating against him for exercising his First Amendment right to file prison grievances against Mr. Yeaton. *See Docket #* 3 at 9 ("Anytime you put a person in punitive segregation for filing lawsuits or grievances . . . is found to be offensive to the ordinary person"), 15 (suggesting that filing a grievance against Mr Yeaton prompted assignment to segregation).

Mr. West also asserts claims against Mr. Youngblood, Mr. Yeaton's supervisor, and Mr. Estep, the Warden of CMRC. Mr. West contends that he wrote to both of these individuals concerning Mr. Yeaton's actions, but that both men "sided with" Mr. Yeaton and refused to release Mr.West from segregation.

Finally, Mr. West asserts a claim against Ms. Callwell, a Nurse Practitioner at CMRC. He states that Ms. Callwell has "the authority to write prescriptions for meds," but that she "refuse[d] to renew my pain meds [because] she said she doesn't think that it's good for my stomach." He contends that as a result, "I'm in all kinds of pain in my left shoulder and lower back." He also contends that Ms. Callwell "took away my sleep apnea machine in which I stop breathing sometimes while sleeping." The Court understands this claim to assert an 8th Amendment violation, sounding in deliberate indifference.

## II. ISSUES

On June 18, 2009, Senior Judge Weinshienk *sua sponte* dismissed **(# 8)** Mr. West's claims against CDOC in this action, finding that CDOC is entitled to 11th Amendment immunity against claims. On July 14, 2009, Mr. West moved for reconsideration **(# 22)** of that Order, asking if his claims against CDOC employees are not subject to immunity, "why should CDOC be excluded from this lawsuit?"

All of the Defendants now move to dismiss the claims against them. The CMRC Defendants – Mr. Estep, Mr. Youngblood, Mr. Yeaton, and Ms. Callwell – argue **(# 41)** that: (i) Mr. West fails to state a Due Process claim because he does not identify the source of any protected liberty or property interest implicated by his confinement to segregation; (ii) that he fails to allege prison conditions sufficient to rise to the level of "cruel and unusual punishment" in violation of the 8th Amendment; (iii) that he cannot establish an Equal Protection claim because his allegations of racial discrimination are purely conclusory; and (iv) the deliberate indifference claims fail to allege a serious medical need, substantial harm, and a sufficient mental state on Ms. Callwell's part. Similarly, the Sterling Defendants argue **(# 42)** that Mr. West's claims against them fail for the same reasons.

### III. ANALYSIS

**A. Standard of review**

In considering the Plaintiff's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to

comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [which] are not entitled to

the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Id.*

**B. Reconsideration**

Mr. West seeks reconsideration under Fed. R. Civ. P. 60(b) of Senior Judge Weinshienk's dismissal of CDOC as a party to this action. Mr. West offers no meaningful legal argument in opposition to Judge Weinshienk's conclusion that CDOC is protected by 11th Amendment immunity. Moreover, 10th Circuit authority on this point clearly demonstrates that dismissal of CDOC as a party was proper. *See Hunt v. Colo. Dept. of Corrections*, 271 Fed.Appx. 778, 780-81 (10th Cir. 2008) (unpublished) ("Mr. Hunt's claim against CDOC is barred as a matter of law"), citing *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir.1988). Accordingly, Mr. West's motion for reconsideration is denied.

**C. Due Process claims**

An essential element of any Due Process claim, substantive or procedural, is that the plaintiff possessed a constitutionally-protected liberty or property interest in the thing that was denied to them. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir.2007). Where, as here, an inmate asserts that assignment to a more restrictive living assignment implicates a liberty interest, the inmate must allege facts that show that the new living assignment involves restrictions representing an "atypical and significant hardship" when compared to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). In *Wilkinson*, the Court found that a combination of factors rose to that level in a "supermax"-style facility: a prohibition on "almost all human contact," including cell-to-cell conversations among inmates; 24-hour

6

illumination of cells; 1 hour per day of indoor exercise in a small room; restrictions continuing indefinitely, subject only to annual review; and denial of eligibility for parole consideration. *Id.* at 223-24. The Court was particularly persuaded by the last two factors – the indefinite duration of the restrictions and the lack of parole eligibility – finding that the remaining factors, "save perhaps for the especially severe limitations on all human contact . . . likely would apply to most solitary confinement facilities." *Id.* at 224.

By contrast, Mr. West's Complaint pleads no facts whatsoever about the conditions of his confinement. Beyond simply describing his assignment as being to "punitive segregation," he pleads no facts whatsoever that indicate the conditions and restrictions he experienced as a result of such confinement, nor indicate the extent to which those conditions or restrictions differed from that experienced by the prison population generally. Without such factual averments, and left with only the mere label of "punitive segregation" as Mr. West's pleading of the conditions of his confinement at either CMRC or Sterling, the Court cannot say that Mr. West has sufficiently pled that his assignment to a segregated housing unit could constitute an "atypical and significant hardship." *Trujillo v. Williams,* 465 F.3d 1210, 1225 (10th Cir. 2006) ("classification of a plaintiff into segregation does not [of itself] involve a deprivation of a liberty interest"); *see also Keck v. Zenon*, 240 Fed.Appx. 815, 818 (10th Cir. 2007) (unpublished) (affirming dismissal of Due Process claim where inmate did not plead "facts regarding the nature of his current detention" in "segregation"); *Martinez v. Zadroga*, 213 Fed.Appx. 729, 731 (10th Cir. 2007) (unpublished) (same). Thus, the mere fact that Mr. West was placed in a segregation unit does not, of itself, suffice to plead a liberty interest sufficient to support a Due Process claim.

Beyond showing that conditions of confinement demonstrate an "atypical and significant hardship," there are two other ways in which an inmate might demonstrate that assignment to segregated housing might implicate a liberty interest. Extended confinement in segregated housing may, of itself, constitute an atypical and significant hardship. *See e.g. Payne v. Friel*, 226 Fed.Appx. 724, 728 (10th Cir. 2008) (unpublished), *citing Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir.1999). In *Payne*, the 10th Circuit cited several other cases in which trial courts erred in dismissing Due Process challenges to segregated housing assignments when the inmates at issue had been in segregation for periods between 75 days and three years. *Id.*, *citing Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir.2002) *and Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir.2006). The record here reflects that Mr. West was in segregated housing in CMRC for a period of 52 days. His Complaint indicates that he was put into segregation by Mr. Yeaton on April 23, 2009, and remained there as of the date of his Complaint. Grievances, attached as exhibits attached to the Complaint, indicate that by May 11, 2009, Mr. West had been advised that his continued presence in segregation was in preparation for CDOC transferring him to an another correctional institution. On June 18, 2009, Mr. West filed a Notice of Change of Address **(# 9)**, indicating that he had been transferred out of CMRC on or about June 14, 2009, and thus, any segregated housing imposed upon him by the Defendants ended at that time. All told, then, Mr. West was in segregation a maximum of 52 days.

The Court has some doubt that, in the circumstances presented here, the duration of Mr. West's confinement in segregation is sufficient to give rise to a liberty interest that would support a Due Process claim. In *Gaines*, the 10th Circuit reversed the District Court's *sua sponte*

8

dismissal of an inmate's Due Process claim where the inmate had been sentenced to 75 days of disciplinary segregation following a disciplinary hearing. The District Court held that the inmate's complaint did not allege that the segregation assignment did not lengthen the inmate's confinement and that the segregation conditions were not atypically and significantly more restrictive than ordinary prison restrictions. The 10th Circuit reversed, finding the District Court's decision "precipit[ous]." *Id.* at 1225. It acknowledged that cases such as *Sandin v. Conner,* 515 U.S. 472, 486 (1995), had found that "discipline in segregated confinement" did not rise to the level of atypical and significant hardship, but, the 10th Circuit explained, decisions such as *Sandin* were the result of courts "carefully examin[ing] the conditions of the prisoner's confinement, ultimately determining that his disciplinary segregation mirrored those conditions imposed on inmates in administrative segregation and protective custody." 292 F.3d at 1225. "By contrast," it continued, "the district court [here] engaged in no such examination of the typical conditions of confinement in Gaines's prison, instead determining in conclusory fashion that seventy-five days in disciplinary segregation was neither atypical nor significant." *Id.* at 1225-26. The 10th Circuit reversed the dismissal and remanded the case to the District Court to "determine whether the seventy-five day duration of Gaines's confinement in disciplinary segregation is itself atypical and significant." *Id.* at 1226. In doing so, it noted that "this case is limited to the length of the seventy-five day disciplinary segregation," and that "disciplinary segregation for some lesser period could fail as a matter of law to satisfy the atypical and significant requirement in a case in the future." *Id.*

A superficial reading of *Gaines* might lead one to the conclusion that the 10th Circuit was stating that an inmate who had been confined to segregation for a period of 75 days or more

9

could automatically establish the existence of a liberty interest based solely on the duration of that segregation. But the 10th Circuit's indication of the District Court's obligation reveals that no bright-line rule was being established. The court instructed that "the district court must determine whether the seventy-five day duration of Gaines's confinement in disciplinary segregation is itself atypical and significant." *Id.* at 1226. The term "atypical" is, by definition, comparative. In other words, the District Court could not assess whether Mr. Gaines' 75-day segregation was "atypical" without first determining what the "typical" period of segregation would be for inmates in that institution. *See e.g. Trujillo*, 465 F.3d at 1225 (noting that Mr. Trujillo's segregation was "atypical" because "he spent over 750 days in segregation and that other inmates remain in segregation for the most serious offenses for only 180 days"). Accordingly, an inmate who attempts to plead the existence of a liberty interest based solely on the duration of a segregation assignment must plead facts sufficient to show that the duration of the inmate's assignment is atypical of the length of segregation assignments given to others in that facility.

Here, Mr. West's Complaint does not do so. He pleads no facts as to the duration of the typical segregation assignment for inmates at CMRC, and without such facts, he has failed to plead facts showing that his 52-day sentence could be considered "atypical." Certainly, a 52-day segregation assignment is not so obviously long that one could assume it to be atypical in the absence of allegations concerning other inmates. *Compare Fogle*, 435 F.3d at 1259 (allegation of 3 years of segregation arguably sufficient to establish liberty interest) *with Sandin*, 515 U.S. at 486 (30 days of segregation insufficient as a matter of law). Thus, because Mr. West has not pled facts that show that the typical segregation assignment in CMRC is significantly shorter

than 52 days, he has not stated a Due Process claim based solely on the duration of his segregation there.

Finally, an inmate may establish a liberty interest in avoiding a certain prison assignment by showing that the state has created a protectible interest in avoiding that assignment. State law creates a liberty interest in inmates in receiving something when it strips prison officials of discretion with regard to whether or not to provide that thing. *See Brown v. Chandler*, 111 Fed.Appx. 972, 976 (10th Cir. 2004) (unpublished), *citing Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989). Thus, if state law or CDOC regulations removed prison officials' discretion to assign inmates to segregation except in specified circumstances, Mr. West's allegations that those circumstances were not met in his case would be sufficient to support a Due Process claim. Mr. West asserts that CDOC regulation 4-4252 and 4-4250 requires prison officials to provide a hearing and establish reasonable cause before an inmate can be confined to segregation. The Defendants contend that these regulations "are not even applicable to him" because of the particular circumstances of his case (*i.e.* that he was in segregation awaiting a transfer to a CDOC facility).

As best the Court can determine, the regulation being referenced is contained within CDOC Administrative Regulation ("AR") 150-01, entitled "Code of Penal Discipline." The provision referenced as 4-4252 is contained within section IV.E of that regulation, a section entitled "Formal Disciplinary Procedures." Subsection 3(g), a section entitled "Segregation prior to hearing/removal from population" contains the reference to regulation 4-4252, and states "An offender should not be placed in punitive segregation prior to a hearing; however, if the offender poses an imminent and substantial threat to the security of the institution . . . he may be

11

segregated prior to the hearing." The remainder of this section goes on to discuss the procedure for removing the inmate from the population pending a disciplinary hearing. This section also makes reference to regulation 4-4250, the other provision cited by Mr. West. That regulation states "Segregation prior to hearing should only be ordered by the Shift Supervisor."

Putting aside the non-mandatory language of the cited provisions, both of which speak to what "should" happen, the Defendants are correct that, by its own terms, regulation 4-4252 does not apply to Mr. West. As is clear from the structure of section IV.E of AR 150-01, these regulations restrict the availability of pre-hearing punitive segregation incident to formal disciplinary proceedings. But, as Mr. West emphasizes, his was not subjected to formal disciplinary proceedings commenced against him; as he states, he "did not receive a write-up" for the incident with the gang member.[1] Thus, the protections that an inmate faced with a formal disciplinary notice would not apply to him. Accordingly, because Mr. West has not pled facts to show that state law limited the discretion of CMRC officials to place him in segregation in these circumstances, he has failed to demonstrate the existence of a liberty interest sufficient to support a Due Process claim.

Accordingly, Mr. West's Due Process claims against the CMRC Defendants are dismissed.

The same result occurs with regard to his Due Process claim(s) against Mr. Scott

---

[1]Contrary to his repeated insistence that he was placed in "punitive segregation," exhibits attached by Mr. West to the Complaint indicate that he was placed in segregation because he had "been discharged from our program and reclassed (sic) due to [his] chronic behavioral problems," and that his segregation was a result of awaiting a formal transfer of Mr. West out of CMRC and into a secure prison facility elsewhere. *Docket* # 3 at 19. CMRC's website at www.doc.state.co.us indicates that CMRC is "designed to address issues unique to pre-release offenders" and to "to prepare each offender for an orderly transition to community placement."

resulting from his segregation at unspecified times in Sterling. Mr. West has failed to allege that the conditions of such segregation were atypically and substantially more restrictive than those imposed on other inmates at Sterling. Moreover, he gives no indication of the length of those segregation periods, making it impossible for the Court to find that duration alone could give rise to a liberty interest. Likewise, he does not plead facts sufficient to show that these periods of segregation were in advance of a hearing on formal disciplinary charges against him, such that regulations 4-4250 and -4252 would limit Mr. Scott's discretion to place him in segregation. Accordingly, Mr. West's Due Process claims against Mr. Scott are also dismissed.

### C. Cruel and Unusual Punishment claims

Mr. West arguably alleges that the conditions of his confinement at CMRC and Sterling violated the 8th Amendment's prohibition on cruel and unusual punishment.

An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either "involve the wanton and unnecessary infliction of pain," that they are "grossly disproportionate to the severity of the crime," or that they entail "serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide adequate food, clothing, shelter, and medical care to inmates, and take reasonable measures to guarantee those inmates' safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In certain circumstances, adverse conditions that, of themselves, would not rise to unconstitutional levels can combine to create a mutually-reinforcing effect that renders them unconstitutional – for example, low cell temperatures coupled with the failure to issue blankets, or small cell sizes coupled with inadequate opportunities for out-of-cell exercise. *Wilson v. Seiter*, 501 U.S. 294,

13

304-05 (1991).

Nothing in Mr. West's Complaint pleads facts sufficient to rise to this exacting standard. Beyond the label of "segregation," Mr. West's Complaint makes no reference whatsoever to the particular conditions of his confinement, much less identify conditions that transgress contemporary standards of decency. Thus, any standalone 8th Amendment claims against any Defendant premised on the conditions of confinement are dismissed.

**D. Equal Protection claims**

Mr. West contends that Mr. Scott and Mr. Yeaton were "racist," and placed him in segregation as a result of his race. Claims of race discrimination in the state prison context implicate the 14th Amendment's Equal Protection clause. *See generally Gray v. Bruce*, 26 Fed.Appx. 819, 824 (10th Cir. 2001) (unpublished), *citing Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1981).

To establish an Equal Protection claim, the Plaintiff must show: (i) that similarly-situated individuals were treated differently; and either (ii) if differential treatment was based on a suspect classification or fundamental right, that it was not supported by a compelling governmental interest, or (iii) if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009).

Mr. West has not pled facts sufficient to show that similarly-situated inmates were treated differently from him. Indeed, his Complaint makes reference to only one other inmate, the white gang member that Mr. West "got in a fight" with, and beyond stating that Mr. Yeaton "sided

14

with" that inmate, the Complaint does not indicate what punishment, if any, the white gang member received for his involvement. The Court might be tempted to conclude that this is sufficient to allege that Mr. West and the white gang member were "similarly situated" for Equal Protection purposes if the Complaint adequately indicated that Mr. West's ensuing segregation was imposed as discipline for being involved with the fight (and that the white gang member was not subjected to segregation); in such circumstances, one could reasonably expect that the other participant in the fight would be subject to the same discipline. But, as noted above, the exhibits attached by Mr. West to the Complaint make clear that the ensuing segregation was not disciplinary in nature, but rather, resulted from Mr. West being expelled from the CMRC program for "chronic behavior problems" and being returned to CDOC custody. Because he has not pled facts sufficient to show that the white gang member's prison record reflected similar "chronic behavior problems," Mr. West has failed to plead facts showing that he and the white gang member were similarly-situated for purposes of determining whether Mr. West's assignment to segregation was discriminatory.

**E. Deliberate indifference claims**

Ms. Stock moves to dismiss the deliberate indifference claim against her on timeliness grounds. A claim under § 1983 is governed by the applicable state statute of limitations on personal injury claims; in Colorado, that limitations period is two years. *Wallin v. Arapahoe County Detention Facility*, 244 Fed.Appx. 214, 221 (10th Cir. 2007) (unpublished), *citing Fogle*, 435 F.3d at 1258. The earliest filing by Mr. West in this action is a motion to proceed *in forma pauperis*, which he signed on May 19, 2009. Treating that as the date of commencement of this action, Mr. West's claims are untimely if they occurred prior to May 19, 2007.

The Complaint alleges that Ms. Stock refused to refill Mr. West's medication in February 2007. He further alleges that "about a month later," he was taken to the hospital, given another prescription for medication, but that Ms. Stock also refused to fill that prescription. Even taking these facts in the light most favorable to Mr. West, both instances fall outside the statute of limitations. The Complaint gives no indication of any other factual basis for a claim against Ms. Stock, and thus, the deliberate indifference claim against her is dismissed as untimely.

Turning to the claims against Ms. Callwell, Mr. West asserts that she was deliberately indifferent to his medical needs by refusing to renew his pain medication in March 2009 and for taking away his sleep apnea machine. To state a deliberate indifference claim based on the delay or denial of medical treatment, an inmate must allege: (i) he suffered from a serious medical need; (ii) the defendant deprived him of treatment or delayed treatment of that need; and (iii) that the defendant did so with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As to the first element, a medical need is "serious" when it has been diagnosed by a physician as requiring treatment or where the condition is so obvious that even a layperson would recognize the need for a doctor's attention. *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000); *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999).

With regard to the element of intent, "deliberate indifference" requires a state of mind "more blameworthy than negligent," but this can be "something less than acts or omissions for the very purposes of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. It is a state of mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to [the] inmate['s] health or safety." *Id.* at 837. It is not enough to show that a defendant provided ineffective or even negligent medical treatment. *DeShaney v.*

*Winnebago County Dept. of Social Services*, 489 U.S. 189, 198 n. 5 (1989); *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008). An Eighth Amendment violation arises only where a defendant subjectively knows of an excessive risk to the plaintiff's safety but nevertheless disregards that risk. *Sealock,* 218 F.3d at 1209.

Turning first to Ms. Callwell's refusal to provide Mr. West with a sleep apnea machine, Mr. West alleges that "I was awarded a sleep apnea machine by CDOC back in 2004." This allegation is sufficient to allege that Mr. West's sleep apnea condition was, at least at that point in time, considered by a medical provider to be sufficiently serious to warrant treatment, and thus, satisfies Mr. West's obligation to plead the existence of a serious medical need. Mr. West alleges that Ms. Callwell personally "took away" his machine, thus satisfying the obligation to allege that Ms. Callwell denied him treatment for his sleep apnea. Mr. West does not clearly allege facts sufficient to plead the final element of this claim – Ms. Callwell's subjective belief that harm might befall Mr. West if the machine was not provided, but the Court can reasonably infer from Ms. Callwell's medical training and awareness of Mr. West's existing prescription for a machine that depriving him of that machine might have. Under these circumstances, Mr. West has adequately pled a deliberate indifference claim against Ms. Callwell based on her refusal to provide him with a sleep apnea machine.

Next, the Court turns to Mr. West's allegation that Ms. Callwell refused to renew a prescription for pain medication for him. The Court will assume, without necessarily finding, that Mr. West's ongoing complaints of shoulder and back pain constitute a serious medical need, given that prior physicians had prescribed him medication for those conditions. Mr. West also asserts that Ms. Callwell denied him treatment, in the form of refusing to renew the

17

prescriptions. However, Mr. West does not adequately allege Ms. Callwell's subjective indifference. He contends that Ms. Callwell refused to provide him with a renewal of the pain medication because "she doesn't think that it's good for my stomach." By Mr. West's own allegations, then, Ms. Callwell made a medical judgment, weighing Mr. West's need for pain relief on one hand, and harm to his stomach on the other. The fact that she concluded that the harm to his stomach outweighed the need for pain relief thus reflects a medical judgment as to what treatment Mr. West should receive. Although the net result of Ms. Callwell's decision was that Mr. West would receive no continuing treatment for his pain, that decision was itself a form of medical attention to his need and thus, defeats any allegation of deliberate indifference. The fact that Mr. West believes that Ms. Callwells' excuse for not giving him his medication is "lame" is irrelevant; an inmate's disagreement with the course of treatment he receives is not enough to state a constitutional violation. *Boles v. Dansdill*, ___F.3d ___, 2010 WL 99058 (10th Cir. Jan. 12, 2010) (slip op.), *citing Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir.1999). Indeed, even if Ms. Callwell's belief that the pain medication was bad for Mr. West's stomach was incorrect, or even if her medical decision would otherwise constitute malpractice, a constitutional claim does not lie so long as she exercised some medical judgment (however erroneously) in deciding how to treat Mr. West's condition.

Accordingly, Mr. West's deliberate indifference claim against Ms. Callwell based on her refusal to renew his pain medications is dismissed.

## **CONCLUSION**

As noted above, the Court construes Mr. West's Complaint to arguably contain an allegation that Mr. Yeaton retaliated against him for exercising his First Amendment right to file

grievances. That claim is not challenged by Mr. Yeaton's motion to dismiss, and thus, remains.[2]

With regard to the remaining claims, the CMRC Defendants' Motion to Dismiss **(# 41)** is **GRANTED IN PART**, insofar as all claims against Mr. Estep and Mr. Youngblood are **DISMISSED**; all claims against Mr. Yeaton, other than a claim sounding in retaliation for Mr. West's exercise of his First Amendment rights are **DISMISSED**, and the deliberate indifference claim against Ms. Callwell based on her refusal to renew Mr. West's pain medication is **DISMISSED**, and **DENIED IN PART**, insofar as Mr. West has adequately stated a First Amendment retaliation claim against Mr. Yeaton and an 8th Amendment deliberate indifference claim against Ms. Callwell based on her refusal to provide him with a sleep apnea machine. The Sterling Defendants' Motion to Dismiss **(# 42)** is **GRANTED**, and all claims against Mr. Scott and Ms. Stock are **DISMISSED**. The caption of this case is **AMENDED** to omit any reference to all Defendants other than Mr. Yeaton and Ms. Callwell. Mr. West's Motion for Reconsideration **(# 22)** is **DENIED**.

Dated this 29th day of March, 2010

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge

---

[2]The Court finds that, to the extent Mr. West attempts to assert claims against Mr. Estep and Mr. Youngblood for Mr. Yeaton's conduct, Mr. West has failed to plead the type of facts necessary to allege vicarious-type liability. Thus, the Court does not deem Mr. West's First Amendment retaliation claim against Mr. Yeaton to also extend to Mr. Estep and Mr. Youngblood.