IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01268-MSK-KLM

ERNEST WEST,

       Plaintiff,

v.

MR. YEATON, Unit Manager CMRC; and,
MS. CALLWELL, CMRC Medical,

       Defendants.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

       **THIS MATTER** comes before the Court pursuant to Defendants Yeaton and Callwell's

Motion for Summary Judgment **(# 89)**, Mr. West's response **(# 90)**, and Mr. Yeaton and Ms.

Callwell's reply **(# 92)**.[1]

**FACTS**

       As narrowed by prior Orders **(# 8, 77)**, Mr. West's case asserts two claims pursuant to

42 U.S.C. § 1983: (i) that Mr. Yeaton retaliated against Mr. West, by assigning him to

segregated housing in April 2009, in response to Mr. West having filed a grievance against Mr.

Yeaton, in violation of rights secured by the First Amendment to the United States Constitution;

and (ii) that Ms. Callwell violated Mr. West's 8th Amendment right by demonstrating deliberate

indifference to his medical needs when she refused to continue to provide Mr. West with a CPAP

---

[1]Also pending is Mr. West's Motion for Hearing **(# 97)**, which, as a result of the ruling
herein, is denied as moot.

machine to treat his sleep apnea.

The undisputed facts in the record[2] show that, at the relevant point in time, Mr. West was an inmate of the Colorado Department of Corrections, housed at the Cheyenne Mountain Re-Entry Center ("CMRC").   According to an affidavit by Mr. Yeaton, Mr. West "had a history of disciplinary problems including verbal altercations, disrespect for fellow residents, and threats to the physical and emotional safety of the environment."  On April 23, 2009, CMRC security was summoned to Mr. West's cell.  Mr. West was yelling and swearing and throwing items, including furniture.  CMRC staff escorted Mr. West to the Special Housing Unit ("SHU").  Mr. Yeaton states that Mr. West was placed in the SHU, and eventually discharged from the CMRC to a more secure facility, "due to an ongoing pattern of disciplinary problems culminating in the incident on April 23, 2009."

The incident involving Ms. Callwell[3] occurred a few days later, on or about April 29, 2009.  Mr. West had been prescribed use of a CPAP machine to address his sleep apnea.  At an unidentified time, the machine initially issued to him broke, and CMRC officials submitted a request to its insurance carrier for a new machine, providing Mr. West a rented machine in the interim.  On April 24, 2009, after being reassigned to the SHU, Mr. West refused to use the CPAP machine, telling CMRC staff that he no longer needed it, as his solitary confinement

---

[2]As discussed in more detail below, the factual recitation here is derived entirely from the Defendants' evidentiary submissions, notwithstanding the Court's obligation to construe the facts in the light most favorable to Mr. West.

[3]An affidavit indicates that this Defendant's name is actually "Caldwell," but the Court will use the spelling that Mr. West used when initiating this action.

meant that "I won't be bothering anyone" with his snoring.[4] On April 29, 2009, Ms. Callwell

received a response from CMRC's insurance carrier to the request for a new machine. The

carrier denied the request, noting that a sleep study conducted on Mr. West indicated that his

average sleep oxygen saturation was sufficiently high that the use of a CPAP machine was not

required. Ms. Callwell also noted that Mr. West was not using the machine as directed, insofar

as instructions for the machine required it to be used with distilled water, but Mr. West used tap

water, instead. For these various reasons, Ms. Callwell issued an instruction on April 29, 2009

that Mr. West's use of the CPAP machine be discontinued.

## ANALYSIS

### A. Standard of review

#### 1. *Pro se* status

Mr. West appears in this action *pro se*. As a result, the Court reads his pleadings

liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is

intended merely to overlook technical formatting errors and other defects in Mr. West's use of

legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

*Pro se* status does not relieve Mr. West of the duty to comply with the various rules and

procedures governing litigants and counsel or the requirements of the substantive law, and in

these regards, the Court will treat Mr. West according to the same standard as counsel licensed to

practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden*

*v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

---

[4]A document in the record indicates that CMRC medical staff told Mr. West that "he should use it every night, not just when he had roommates," but does not indicate whether Mr. West heeded this advice.

2. <u>Summary judgment</u>[5]

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

Here, the moving parties – the Defendants – do not bear the burden of proof at trial.

They must point to evidence that demonstrates that there is no genuine dispute of material fact

with regard to the claims. Fed. R. Civ. P. 56(a), (c)(1). The burden is then on Mr. West to

demonstrate, by pointing to evidentiary material in the form of affidavits, deposition transcripts,

or otherwise, that there is a genuine dispute of fact as to one or more elements of the claim, thus

---

[5]Fed. R. Civ. P. 56 was modified effective December 1, 2010. The instant motion was
filed prior to that date. The changes to the rule do not affect the analysis herein, and the Court
cites to the relevant portions of the rule currently in effect.

requiring trial.  *Id.*  If Mr. West fails to support his contentions with evidentiary material, the

Court may deem the Defendants' adequately-supported factual showings to be undisputed and

resolve the motion accordingly.  Fed. R. Civ. P. 56(e)(2), (3); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986).

The Defendants have supported the factual contentions in their motion with their own

affidavits.  Mr. West, on the other hand, has submitted only an opposition brief, unsupported by

affidavits or other evidentiary material.  Although Mr. West's brief itself contains a number of

factual assertions, it is neither sworn to or affirmed under penalty of perjury, thus preventing the

Court from treating it as the equivalent of an affidavit under 28 U.S.C. § 1746.  Were the Court

inclined to treat the factual assertions as compliant with Rule 56(c)(1), the Court nevertheless

observes that Mr. West's factual assertions do not contradict the facts set forth in the

Defendants' affidavits.[6]  Because none of the facts asserted by Mr. West directly contradict

---

[6]Mr. West's brief makes the following factual assertions: (i) "it is a lie that I was put in segregation . . . for 49 straight days . . . without pain meds due to my suppos[ed] protected activity"; (ii) Mr. West has "had problems with Mr. Yeaton" in the past; (iii) Mr. West "got into a fight with one of [Mr. Yeaton's] team leaders," which resulted in Mr. Yeaton "constantly harassing me as well as theat[en]ing to put me in segregation"; (iv) he has been prescribed medication for "chronic pain" since 2006; (v) Ms. Callwell denied him pain medication throughout his time at CMRC; and (vi) while housed in the SHU, Ms. Callwell took away his CPAP machine.

Mr. West also asserts that six witnesses could provide testimony that would support his claim, but fails to make the showing required by Fed. R. Civ. P. 56(d) to warrant deferring ruling on the Defendants' motion.  The operative language of Rule 56(d) was previously found in Rule 56(f), requiring a party to show, via affidavit, that it "cannot, for reasons stated, present facts essential to justify the party's opposition."  There is no apparent substantive difference between the former Rule 56(f) and the current Rule 56(d), making it appropriate to consider caselaw applying Rule 56(f).  Under Rule 56(f), a party seeking to defer ruling on a summary judgment motion was required to do more than simply assert a need for additional discovery or promise the production of evidence at some future time; rather, the party seeking to defer ruling must expressly identify the specific facts sought to be obtained and what steps the party has already made to obtain them.  *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522

those facts recited above, the Court finds that there is no genuine dispute of material fact with regard to the claims in this case.

### B.  First Amendment claim

To establish a claim for First Amendment retaliation, Mr. West must show: (i) he engaged in constitutionally-protected activity; (ii) he suffered an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (iii) there is a causal relationship between his protected activity and the adverse action, such that the latter was "substantially motivated" by the former.  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Turning to the first element – whether Mr. West can show that he engaged in constitutionally-protected activity, the Court notes that Mr. West's summary judgment response makes no specific mention of any such activity.  (At best, he mentions only "my supposed protected activity," without elaboration. However, the Court notes that Mr. West alleges in his Complaint (**# 3**) that he filed grievances against Mr. Yeaton on April 17, 2009, and escalated that grievance to a second stage on April 23, 2009.  Fed. R. Civ. P. 56(c)(3) requires the Court to consider the materials submitted in conjunction with the summary judgment motion, but grants the Court discretion to further consider "other materials in the record."  The Court notes that the Complaint is verified under penalty of perjury, allowing the Court to treat it as evidentiary

---

(10th Cir.1992).  Here, Mr. West does not only not support any apparent Rule 56(d) request by affidavit, but he also fails to indicate what specific facts the six named witnesses would provide and also fails to explain what efforts he took to secure those witness' testimony during the discovery period in this case.  Accordingly, the Court declines to grant relief to Mr. West under Rule 56(d).

material under 28 U.S.C. § 1746.  Thus, the Court will consider whether Mr. West's April 17,

2009 grievance, attached to the Complaint, constitutes "constitutionally-protected activity."

Although courts generally deem inmates' invocation of a prison grievance procedure to

constitute activity protected by the First Amendment, certain grievances fall outside the

constitution's protection.  For example, frivolous grievances do not amount to First Amendment

activity.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("Herron's pursuit of legal claims

against CCCF officials in the instant case and in previous cases was protected conduct only to

the extent that the underlying claims had merit").  Similarly, an inmate who presents an

otherwise meritorious grievance in a disruptive way foregoes First Amendment protection for

that conduct.  *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010).

This Court has some doubt that Mr. West's grievance enjoys constitutional protection.

Mr. West's grievance states:

> Harassment and threats: Due to on going harassment and threats by
> Unit Manager Yeaton and other structure inmates here in Unit 2B,
> I'm asking to be removed from this 2B Unit as of today.  Mr.
> Yeaton threaten me on 4/15/09 that if another inmate report my
> name to him one more time he will put me in seg ([SHU]).  This is
> his second time that he's threaten me to put me in seg concerning
> other inmates.

Mr. West does not contend that Mr. Yeaton's conduct violated a prison rule or regulation, or, for

that matter, that Mr. Yeaton's conduct was somehow unwarranted.  Mr. West seems to

acknowledge that other inmates had complained to Mr. Yeaton about Mr. West's conduct in the

past, and Mr. Yeaton had told Mr. West that further complaints from inmates about Mr. West

would result in Mr. West being placed in segregation.  Mr. West does not contend that the

complaints from other inmates were spurious, nor that the punishment threatened by Mr. Yeaton

for future complaints against Mr. West was excessive or improper.  Simply put, Mr. West's grievance is nothing more than a complaint that Mr. Yeaton threatened him with punishment should he misbehave again.

This "threat" by Mr. Yeaton is entirely consistent with prison management and a grievance challenging such a "threat" is necessarily frivolous and not protected by the First Amendment.  To find otherwise would be to entitle inmates to insulate themselves against discipline for future misconduct by filing grievances each time prison staffers warned them against engaging in such misconduct.

Even assuming Mr. West's grievance enjoyed First Amendment protection, and assuming that his assignment to the SHU was an adverse action sufficient to satisfy the second element of the claim, the Court nevertheless finds that Mr. West cannot demonstrate the third element – a causal connection between his grievance and his assignment to the SHU.  First, although Mr. West has provided copies of the grievances he filed, he has not demonstrated that Mr. Yeaton had any knowledge of those grievances prior to assigning Mr. West to the SHU. Nothing in the CMRC's response to the grievance indicates that Mr. Yeaton was given a copy of the grievance or consulted about its contents.  Without evidence that Mr. Yeaton was of Mr. West's grievance, no causal relationship can be demonstrated between the two events.  *Hook v. Regents of University of California*, 2010 WL 3529414 at *14 (10th Cir. Sept. 13, 2010) (slip op.), *citing Morfin v. City of Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003).

Second, even if Mr. West could show that Mr. Yeaton knew of the grievance, Mr. West has otherwise carried his burden of coming forward with evidence that could support a finding of causation.  The 10th Circuit has found that close temporal proximity between protected conduct

and adverse action "may warrant an inference of retaliatory motive," but emphasizes that "temporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor" for an adverse action. *Id.*, *quoting Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). The court has explained that such additional evidence may be found where the actor's "knowledge of the protected speech, together with close temporal proximity between the speech and the challenged action, may be sufficiently probative of causation to withstand summary judgment," or that additional evidence of causation may exist where "the speech implicated the [actor] in serious misconduct or wrongdoing." *Id.* On the other hand, the court instructs that "evidence of intervening events [can] undermine any inference of retaliatory motive and weaken the causal link." *Id.*

Arguably, there is very close temporal proximity between Mr. West's initial grievance on April 17, 2009 and his assignment to the SHU on April 23, 2009, and, potentially, even closer proximity between his escalation of the grievance on April 23, 2009 and the SHU assignment that same day.[7] This temporal proximity, coupled with evidence that Mr. Yeaton knew of the grievance, might be sufficient to defeat summary judgment. *Id.* However, here, there is an "intervening event" that "undermine[s] any inference of retaliatory motive." *Id.*

Mr. Yeaton has contended, and Mr. West has not disputed, that Mr. West engaged in disruptive behavior in his cell on April 23, 2009, "yelling and swearing" and throwing furniture. This conduct, which indisputably warrants discipline in and of itself, breaks any causal chain between Mr. West's grievance and his assignment to the SHU, making clear that his own

---

[7]Without knowing the relative times of each event, it is also possible that Mr. West's escalation of the grievance occurred after Mr. Yeaton's actions.

disruptive behavior was the true cause of his SHU assignment.[8]

Accordingly, the Court finds that Mr. Yeaton is entitled to summary judgment on the claim against him.

### C. Eighth Amendment claim

Mr. West's claim against Ms. Callwell asserts deliberate indifference to his medical needs in violation of the Eighth Amendment.  As the Court's prior Order explained, to prove a deliberate indifference claim based on the delay or denial of medical treatment, Mr. West must show: (i) he suffered from a serious medical need; (ii) Ms. Callwell deprived him of treatment or delayed treatment of that need; and (iii) she did so with a  sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As to the first element, a medical need is "serious" when it has been diagnosed by a physician as requiring treatment or where the condition is so obvious that even a layperson would recognize the need for a doctor's attention.  *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000); *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). With regard to the element of intent, "deliberate indifference" requires a state of mind "more blameworthy than negligent," but this can be "something less than acts or omissions for the very purposes of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at  835.  It is a state of

---

[8]Indeed, Mr. West is required to show that his protected conduct was the "but for" cause of the adverse action against him.  *Strope v. Cummings*, 381 Fed.Appx. 878, 884 (10th Cir. 2010) (unpublished).  His grievance acknowledges that Mr. Yeaton warned him that future acts of misbehavior would result in an assignment to the SHU, and Mr. West does not dispute that he engaged in disruptive behavior on April 23, 2009.  There is ample evidence that Mr. West's disruptive behavior on April 23, 2009 was the cause of his assignment to the SHU, but no comparable evidence suggesting that his grievance, not his misbehavior, was the cause in fact of that assignment.

mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive

risk to [the] inmate['s] health or safety." *Id.* at 837.   It is not enough to show that a defendant

provided ineffective or even negligent medical treatment. *DeShaney v. Winnebago County Dept.*

*of Social Services*, 489 U.S. 189, 198 n. 5 (1989); *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th

Cir. 2008).   An Eighth Amendment violation arises only where a defendant subjectively knows

of an excessive risk to the plaintiff's safety but nevertheless disregards that risk.  *Sealock,* 218

F.3d at 1209.

Ms. Callwell has shown, and Mr. West has not disputed, that a physician, albeit one

employed by CMRC's insurance carrier, rendered an opinion that Mr. West's condition did not

require treatment with a CPAP machine.  Dr. Krebs examined Mr. West's records and concluded

that Mr. West's oxygen saturation levels did not rise to the level that a CPAP machine was

warranted.  Although another physician previously diagnosed Mr. West as needing a CPAP

machine, Dr. Krebs apparently disagreed.

When a medical staffer, such as Ms. Callwell, is advised that two doctors have differing

opinions as to the appropriate treatment for an inmate, the Court cannot say that the staffer's

decision to follow one doctor's instructions over the other satisfies the intent requirement of a

deliberate indifference claim. *See Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004)

(difference of medical opinion cannot support a claim of deliberate indifference).  Ms. Callwell

was faced with instructions from an unknown doctor to allow Mr. West to use the CPAP

machine, and instructions from Dr. Krebs to discontinue its use.  By following either one of these

directives, Ms. Callwell evidenced an intent to provide Mr. West with the medical care as

directed by a physician, not deliberate indifference to his need *vel non* for medical treatment.

11

Moreover, Ms. Callwell has demonstrated, and Mr. West has not disputed, that Mr. West refused to continue using the CPAP machine once he was assigned to the SHU. An inmate's refusal of proffered medical treatment defeats a claim of deliberate indifference against the provider offering such treatment. *See e.g. Richard v. Bokor*, 379 Fed.Appx. 719, 722 (10th Cir. 2010) (unpublished); *Carter v. Troutt*, 175 Fed.Appx. 950, 951 (10th Cir. 2006) (unpublished). Accordingly, Ms. Callwell is entitled to summary judgment on the claims against her.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 89)** is **GRANTED**, and judgment in favor of Defendants Yeaton and Callwell shall enter contemporaneously with this Order. Mr. West's Motion for Hearing **(# 97)** is **DENIED** as moot.

Dated this 6th day of January, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge